[Civ. No. 5821. Second Appellate District, Division One.—October 27, 1928.]

ADRIAN C. CONWAY, Appellant, v. CITRUS BELT LAND COMPANY (a Corporation) et al., Respondents.

E. C. Pyles and John M. Thomas, Jr., for Appellant.

Scarborough.& Bowen for Respondents.

HOUSER, J.—Broadly stated, the underlying and outstanding facts appertaining to the litigation upon which the appeal herein is predicated are as follows: The Citrus Belt Land Company, a corporation with an authorized capital stock of $250,000, was the owner of a tract of land approximating 5,000 acres which it proposed to improve, subdivide, and sell. In attempting to carry out such program the corporation became financially involved to the extent of about $293,000 in unpaid and overdue debts—the greater part of which being represented by bonded indebtedness and mortgages. While if given plenty of time to work out its difficulties, the corporation probably was financially sound and responsible, in the sense that it was unable to meet its obligations as they became due, the corporation was insolvent. (Sec. 3450, Civ. Code.) Its various creditors were pressing for payment of the respective sums of money due them and were threatening foreclosure proceedings. After the corporation had exhausted all its credit, means, and sources of raising money for the discharge of its obligations, and after each of the directors

of the corporation had likewise exhausted his personal ability to refinance the corporation, through the efforts of one Rex B. Clark a proposition was presented by a bond company to the corporation to the effect that if the corporation would change its corporate name, increase its authorized capital stock to the sum of $300,000 and issue bonds to the amount of its new capitalization; or, as an alternative, organize a new corporation with the identical capitalization of $300,000, which would take over the assets of the old corporation, for which stock in the new corporation would be issued in payment, and have the new corporation issue bonds in the sum of $300,000—the bond company would buy the bonds at a discount, and thus funds would be made available for the immediate relief of the financial difficulties of the corporation. For reasons which seemed sufficient, and especially for the purpose of expediting the desired ultimate result, the latter course was selected, with the result that a corporation known as the North Corona Land Company was organized, which, with the active assistance and co-operation of the old company (Citrus Belt Land Company), proceeded to and did carry out the plan hereinbefore outlined. In so doing, 1,225 shares of the capital stock of the North Corona Company were issued to the Citrus Belt Land Company in payment of its assets, and which shares of stock in the North Corona Company, in turn, were distributed by the Citrus Belt Land Company to its stockholders in the proportion which the shares of stock owned by each stockholder therein bore to the total number of outstanding shares of the Citrus Belt Land Company. Shortly prior to the time when the negotiations were concluded, looking to the accomplishment of the re-financing of the affairs of the Citrus Belt Land Company, an agreement had been entered into between it and Clark by which the latter was to become the purchaser from the former of 1,204½ shares of the unissued and treasury stock of the Citrus Belt Land Company at a price of $50 per share. By reason of the foregoing facts, so far as the Citrus Belt Land Company was concerned, the execution of that agreement became impracticable; but as a solution of the situation the North Corona Company was substituted in the place of the Citrus Belt Land Company and issued to Clark its certificate of stock for the 1,204½ shares of

its capital stock in the place and stead of that number of shares which, according to the aforesaid agreement, should have been issued by the Citrus Belt Land Company. In addition thereto, as compensation for services performed by Clark in refinancing the Citrus Belt Land Company as aforesaid, the North Corona Company issued to Clark 70½ shares of its capital stock. Thereupon each of the two actions which are the foundation for this appeal was commenced. The main ultimate purpose of each of the actions was to have declared the illegality of the distribution of the shares of the capital stock of the North Corona Company among the stockholders of the Citrus Belt Land Company— to the end that the latter company and each of its directors would be held liable for such assumed illegal acts in accordance with the provisions of section 309 of the Civil Code. In the second action, however, additional damages were sought as against the corporations and each of their directors for their alleged unauthorized and illegal acts in selling the 1,204½ shares of the capital stock of the North Corona Company at $50 per share, as well as for transferring the 70½ shares thereof to Clark for services performed by him. By stipulation entered into by the respective parties, and on order made by the trial court, the two actions were consolidated.

Based upon voluminous findings of fact, the lower court ordered judgment for the defendants. On the appeal therefrom appellant presents numerous specifications of error, which, among other things, include attacks upon various findings of fact upon the ground that the evidence was insufficient to support the same. To herein set forth the several findings to which objection is made, as well as the evidence bearing thereon introduced at the trial of the action, would entail no inconsiderable labor and occupy a space not to be justified by any novelty of legal principle involved. ▮ It is a well-settled rule that on appeal, if an attacked finding be supported by any substantial evidence, it cannot be disturbed. As to those findings to which appellant has directed attention, it may suffice to state that, with such rule in mind, after a careful examination of each of the findings of which complaint is made, together with the transcript of the evidence, this court is convinced that

the contention of appellant with reference to the lack of substantial evidence in its support cannot be sustained.

The contention on the part of the appellant to the effect that the distribution by the Citrus Belt Land Company among its stockholders of the 1,225 shares of the stock of the North Corona Company was in violation of the provisions of section 309 of the Civil Code is based upon the assumption that the two corporations were separate and distinct entities, and that the transfer by the Citrus Belt Land Company of its assets to the North Corona Company amounted to a sale between the two corporations, each of which was wholly disconnected from the other and dealing at arm's-length one toward the other. With reference to the relations existing between the two corporations, the general findings by the trial court in substance were that the plan hereinbefore outlined was adopted solely for the purpose of refinancing the affairs of the Citrus Belt Land Company in order that its assets might be saved for the benefit of its stockholders. Specifically, the trial court found:

"That thereafter it was deemed by the parties best to carry out said plan through a corporation under a new name, instead of through the old corporation, and thereupon the Citrus Belt Land Company, for the purpose of performing and carrying out said accepted plan of refinancing its affairs and saving its assets, and for no other purpose, caused to be incorporated and organized in January, 1921, the defendant North Corona Land Company, and in February, 1921, the Citrus Belt Land Company transferred and delivered to the North Corona Land Company all its lands, personal property and other assets, including its office, books, etc., and thereafter all business was transacted in the name of the North Corona Land Company who had the same directors and officers as the old company, except defendant Rex B. Clark became a director and its president. . . .

"That the North Corona Land Company was not so organized as a new, independent, or outside corporation, nor was the transfer to it by the Citrus Belt Land Company of its assets a sale of such assets, nor was the distribution of the North Corona Land Company stock by the Citrus Belt Land Company among its stockholders an un-

lawful distribution of corporate assets among its stockholders in violation of section 309, Civil Code.

"But the court finds that the North Corona Land Company was only a reorganization and continuation of the Citrus Belt Land Company under a new name, and that it was so organized, the assets transferred to it, and its stock distributed to the stockholders of the Citrus Belt Land Company for the sole purpose of effecting and carrying out the plan of refinancing the affairs of the Citrus Belt Land Company in accordance with its agreement with William R. Staats Company, to pay its debt, and save its assets for the benefit of its creditors and stockholders, and that all of said proceedings and acts did result in saving said assets from loss by foreclosure and sale, and in preserving them for the benefit of the creditors and stockholders of Citrus Belt Land Company and no one was injured thereby.

"That all said proceedings were authorized by the resolutions adopted at meetings of stockholders of Citrus Belt Land Company held May 26, 1919, and January 15, 1920, referred to above in finding 'Fourth,' and by those resolutions plaintiff authorized, consented to and approved all said acts and proceedings of the board of directors in refinancing said corporation."

Considered broadly and without reference to conditions surrounding the organization of any two or more corporations, it is a general rule that each of such bodies must be considered as a separate entity. But equity has the power to, and in the administration of justice it may, decree that the situation of interested parties demand that the fictitious and assumed corporate personalities of such corporations be regarded either as one or more corporations, or even as private individuals of which such corporations may be composed. (*Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675, 696, 697 [227 Pac. 723].) And the rule has had its application not only in cases where the rights of creditors were involved, but as well in other cases where the rights of stockholders among themselves were presented for the consideration of the court. (*Chater* v. *San Francisco Sugar Refining Co.*, 19 Cal. 220; *Shorb* v. *Beaudry*, 56 Cal. 446; *Cornell* v. *Corbin*, 64 Cal. 197 [30 Pac. 629]; *Kohl* v. *Lilienthal*, 81 Cal. 378 [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689];

*Hunt* v. *Davis,* 135 Cal. 31 [66 Pac. 957] ; *Wise Realty Co.*
v. *Stewart,* 169 Cal. 176 [146 Pac. 534].)

· In the course of the several opinions in the authorities
to which attention has been directed, such expressions as
the following may be found:

"The truth is, the corporation, under our system, follow-
ing such an agreement would be the mere agency of the
associates created for the sake of convenience in carrying
out the agreement, as between those who made the bargain
—the different characters or forms in which or by which
the bargain was made, and the order in which the several
parts of it were executed, makes no substantial difference
in the obligation." (*Chater* v. *San Francisco Sugar Re-
fining Co.,* 19 Cal. 220, 247.)

"Substantial justice can be administered in this case by
treating the parties in the light of their agreements between
themselves, independently of their incorporation, and in no
other way that we have been able to discover can this be
done." (*Shorb* v. *Beaudry,* 56 Cal. 446, 450.)

" 'The corporation was formed as a mere agency for
more conveniently carrying out the agreements of the par-
ties; and the relation sustained by it to them is 'substan-
tially, if not technically, that of a trustee.' And, as in the
case cited, it must be held that 'substantial justice can be
administered in this case by treating the parties in the
light of the agreements between themselves, independently
of their incorporation, and in no other way.' " (*Hunt* v.
*Davis,* 135 Cal. 31, 34 [66 Pac. 957, 958].)

"The complete answer to all these matters is found in
the familiar principle that equity will look through form
to substance, and so looking, it is beyond controversy that
these corporations were but the mere instrumentalities
through which the associates acted. If the transactions
between the associates themselves were fair, then, as there
are no rights of independent and nonparticipating stock-
holders involved, the corporate irregularities, however
serious, mean nothing. If it were necessary equity indeed
would compel the corporations themselves to so adjust, re-
model and reform their transactions as to give them a legal
validity commensurate with their equitable validity."
(*Wise Realty Co.* v. *Stewart,* 169 Cal. 176, 185 [146 Pac.
534, 538].)

In the instant case, it is obvious that the course adopted and pursued throughout the transaction and which saw its culmination in the allotment and distribution by the Citrus Belt Land Company of the 1,225 shares of stock of the North Corona Company was nothing other than the original plan of the stockholders and directors of the Citrus Belt Land Company. If the entire assets of that company were to be taken over by the North Corona Company, in the circumstances, the only way by which the respective stockholders of the Citrus Belt Land Company could be compensated would be by distributing to them shares of stock in the North Corona Company in the proportion which their shares in the Citrus Belt Land Company bore to its outstanding stock. Neither the Citrus Belt Land Company as a corporation nor any of its stockholders (other than plaintiff) appears to be in anywise dissatisfied with the manner in which the refinancing of the Citrus Belt Land Company was accomplished; indeed, each of them has accepted his shares of stock in the new corporation and ratified the entire transaction. That plaintiff received his full and proper allowance is undisputed and on that score he has no just cause of complaint. Furthermore, the evidence conclusively shows that at the outset, at a stockholders' meeting of the Citrus Belt Land Company, on which occasion the financial distress of the corporation was the principal subject of discussion, plaintiff personally voted in favor of a resolution adopted at such meeting whereby the board of directors of the corporation was authorized to ''refinance the corporation upon such terms and in such manner as they may in their best judgment see fit, and to sell the property in whole or in part at such prices and on such terms as they may be able to make.'' And again, at a later date, under similar conditions, plaintiff himself offered and moved the adoption of the following resolution, which was unanimously adopted, to wit: ''Resolved that the directors of this company be authorized and instructed to take such action as they deem best to raise the necessary moneys to pay the interest on the bonds and other current indebtedness by assessment of the stock or such other manner as they may deem expedient.''

Considering the facts (among others) that long before either of the actions herein was commenced, the transac-

tion of which complaint is made was entirely completed; that, as found by the trial court, plaintiff had either actual or constructive notice of each of the several steps leading up to the distribution of the shares of stock of which he complains; that plaintiff voted in favor of the several resolutions authorizing the board of directors of the Citrus Belt Land Company to "refinance the corporation upon such terms and in such manner as they may in their best judgment see fit"—it is clear that neither the Citrus Belt Land Company as a corporation, nor plaintiff, either as a stockholder, or in his individual capacity, is entitled to any relief.

With respect to the sale to Clark of the 1,204½ shares of stock, it appears from the evidence, and is so found by the trial court, that several months before the Citrus Belt Land Company was reorganized and refinanced, at a stockholders' meeting at which 1,127½ shares of the 1,295½ shares then outstanding were represented, "a resolution was adopted by the vote of all stock present, except plaintiff voted 'no,' and 104 shares not voting, authorizing the board of directors to sell or otherwise dispose of all the unissued shares of stock in the treasury of the company at such price and on such terms as may seem best to said board. . . .

"That thereafter, as above found, it was determined to reorganize the company by the organization of a new corporation, which should take over the assets and issue the new bonded indebtedness, and after said North Corona Land Company had been formed and issued its bonded indebtedness, it was agreed that said Clark would take 1,204½ shares of said North Corona Land Company in place of the shares of the Citrus Belt Land Company which had become of no avail; that said Clark did pay, as agreed, the sum of $50 per share, aggregating $60,225, which was applied on the debts of said Citrus Belt Land Company, and said Clark advanced said money before it became due to prevent the creditors from enforcing their claims by foreclosure of their liens, and to preserve the assets from loss."

As to the 70½ shares which were transferred to Clark in payment of his services, the trial court found:

"That the Citrus Belt Land Company, out of the shares of North Corona Land Company stock received by it, transferred to Rex B. Clark 70½ shares in payment of his services in aiding its officers to induce its creditors to defer enforcement of their claims, and to refinance the corporation by a plan which saved its assets from sale and loss. The court finds that said Clark did render such services, and that said stock was not an unreasonable compensation therefor."

█ Plaintiff's contention that no consideration was paid by Clark for the 1,204½ shares is completely answered by the finding of the trial court to which reference has been had. Regarding the claim now made by appellant that the evidence was insufficient to support the finding in effect that the services rendered by Clark were of the reasonable value of the 70½ shares of stock which were transferred by the corporation in payment of such services, it is sufficient to say that no such issue was presented by the pleadings.

While many other points are suggested by appellant in his brief as a reason for a reversal of the judgment herein, on consideration thereof it appears that each of them is subsidiary to and dependent upon a decision in favor of the contentions made by him as affecting the several points which hereinbefore have received the attention of this court. It would follow that none of such suggestions requires consideration at this time.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 19, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1928.

All the Justices concurred.